## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RONALD SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-1679 (KBJ) |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Ronald Smith ("Plaintiff" or "Smith") was working as a driver for a federal government agency on November 5, 2009, when he dropped off passengers near a controlled barricade on the outskirts of the United States Capitol complex.  Smith encountered Defendant Corey Rogers, an officer with the U.S. Capitol Police ("USCP"), and a confrontation ensued.  When Rogers walked away from the car that Smith was driving, Smith pulled off quickly, coming close to Rogers as he went. Rogers immediately reported the incident to headquarters by radio, prompting Defendant Lawrence Anyaso, another USPC officer, to arrest Smith and charge him with assault with a deadly weapon and assault on a police officer.  Although the United States Attorney's Office subsequently dropped the criminal charges, Smith has filed the instant action against the United States under the Federal Tort Claims Act ("FTCA") asserting various claims arising from his arrest.  Specifically, Smith brings claims for false arrest, malicious prosecution, and intentional infliction of emotional distress, and

a *Bivens* claim against Rogers and Anyaso in their individual capacities for violating Smith's Fourth Amendment rights.

Before this Court at present is Defendants' motion to dismiss or, in the alternative, for summary judgment.  (*See* Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mot."), ECF No. 14.)  Defendants base most of their arguments on a video recording of the incident—which closed-circuit television captured—and audio recordings of the radio communications between the officers, both of which the Defendants have submitted for the Court's review.  In particular, Defendants maintain that the recordings reveal that probable cause existed to arrest and prosecute Smith, and therefore, that the false arrest and malicious prosecution claims against the United States and the *Bivens* claim against Rogers and Anyaso must be dismissed.  (*See* Defs.' Mot. 10, 24–26.)[1]  Defendants also argue that Smith's *Bivens* claim is barred by the applicable statute of limitations (*see id.* at 8), and that, in any event, the individual officers are entitled to qualified immunity for any such claim (*see id.* at 10).  Finally, Defendants contend that Smith has failed to state a claim for intentional infliction of emotional distress because the conduct alleged in the complaint does not meet the high standard of "extreme and outrageous conduct" that District of Columbia law requires. (*Id.* at 26–27 (quoting *Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 95 (D.D.C. 2011)).)

On July 31, 2015, this Court entered an order **GRANTING** Defendants' motion and dismissing Smith's case.  The instant Memorandum Opinion sets forth the Court's reasons for that order.  In short, this Court agrees with Defendants that the closed-

---

[1]  Pages numbers herein refer to those that the Court's electronic case filing system automatically assigns.

circuit video footage of the incident establishes that there was probable cause to arrest and prosecute Smith—which means that Smith's false arrest, malicious prosecution, and *Bivens* claims must be dismissed—and that none of the allegations of wrongdoing in Smith's complaint related to the type of outrageous conduct that is required to state a claim for intentional infliction of emotional distress.

## I.       BACKGROUND AND PROCEDURAL HISTORY

The background facts alleged in Smith's complaint are largely undisputed, and as mentioned, both the vehicle-related incident and the officers' ensuing radio communications were recorded.

On November 5, 2009, Smith was dropping off passengers in the area of Delaware and Constitution Avenues, NE, which is near the U.S. Capitol complex, in his capacity as a driver for a federal agency.  (Compl., ECF No. 1, ¶¶ 6–7.)  After the passengers exited, Officer Rogers approached Smith's vehicle and allegedly chastised Smith for stopping to drop off passengers at that location.  (*Id.* ¶ 7.)  The two men proceeded to have a conversation that lasted for about a minute, at which point Rogers turned away from the car and began to walk back toward his post.  (*Id.* ¶¶ 7–8.)  The video captured Smith looping around and pulling away aggressively.  (Video Footage: Cam. 1864 Ind. & Del. (Nov. 5, 2011), Ex. 2 to Decl. of Cathy Y. Barnhardt ("CCTV Video"), ECF No. 14-1, at 14:50–14:57.)  Although the camera angle does not reveal the exact distance between Rogers and Smith's car, it is clear that Smith drove the car toward Rogers, and that the passenger side of Smith's car was close to Rogers when the car passed by.  Rogers immediately reported over the police radio that Smith had "intentionally almost struck" him.  (Audio Tape: U.S. Capitol Police Dispatch (Nov. 5,

2011), Ex. 2 to Decl. of Contricia A. Tyson, ECF No. 14-2, at 00:32–00:52; *see also id.* at 01:45–01:55 (Rogers reporting that he had gotten out of the way of the vehicle).)[2] This report led other Capitol Police officers to stop Smith's vehicle, and Rogers then reiterated his accusation. (Compl. ¶ 9.) According to the complaint, Rogers's statement was a "blatant falsehood" that resulted in Smith's arrest at the hands of Officer Anyaso. (*Id.*)

After the arrest, Anyaso wrote a report in which he stated that he had viewed the footage related to the incident and that the recorded episode "'was consistent with what Rogers has reported." (*Id.* ¶ 10.) Smith contends that Anyaso's statement, too, was false, insofar as the video footage instead "clearly and unequivocally" reveals that Smith did not "attempt to hit defendant Rogers [or] come close to striking the left leg of defendant Rogers with his vehicle as alleged." (*Id.* ¶ 11.) Based on the representations by Rogers and Anyaso, Smith was held in jail overnight and charged with assault on a police officer and assault with a deadly weapon. (*Id.* ¶¶ 9, 13.)

Although the government later dropped the criminal charges that had been brought against Smith (*id.* ¶ 13), Smith filed a claim for damages with the USCP on November 4, 2011 (*id.* ¶ 14). The USCP denied Smith's claim on April 16, 2012, and on October 11, 2012, Smith brought the instant action in federal court. Smith's complaint asserts three common law claims against the United States under the FTCA: false arrest (*id.* ¶¶ 15–17), intentional infliction of emotional distress (*id.* ¶¶ 18–20),

---

[2] Smith alleges in his complaint that Rogers reported to his fellow officers that Smith "had in fact struck [Rogers'] left leg" (Compl. ¶ 8); however, Smith has since admitted that Rogers did not accuse Smith of striking him in the radio transmission. (*See* Pl.'s Resp. to Defs.' Statement of Material Facts as to Which it is Alleged There is No Genuine Dispute ("Pl.'s Resp. to Stmt. of Material Facts"), ECF No. 18-1, ¶ 9.)

and malicious prosecution (*id.* ¶¶ 21–24).  The complaint also brings a *Bivens* claim

against Officers Rogers and Anyaso, alleging that these officers violated Smith's Fourth

Amendment rights in connection with his arrest and subsequent prosecution.  (*Id.*

¶¶ 25–28.)[3]

On September 9, 2013, Defendants filed the motion to dismiss the complaint, or

in the alternative, motion for summary judgment, that is the subject of this

Memorandum Opinion.  Defendants motion asserts that Smith's false arrest and

malicious prosecution claims against the United States fail because probable cause

existed to arrest and prosecute Smith.  (*See* Defs.' Mot. 10, 24.)  Defendants further

argue that the existence of probable cause, the statute of limitations, and the doctrine of

qualified immunity likewise doom Smith's *Bivens* claim against Rogers and Anyaso.

(*Id.* at 8, 10, 24).  Finally, Defendants contend that Smith's claim for intentional

infliction of emotional distress fails because the predicate conduct does not rise to the

level of "extreme and outrageous conduct" necessary to state such a claim under

District of Columbia law.  (*Id.* at 26–27.)

## II.    LEGAL STANDARDS

### A.    Legal Standard For A Rule 12(b)(6) Motion To Dismiss

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility "is

---

[3]  *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).  The plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  "[W]hile 'detailed factual allegations' are not necessary, the plaintiff 'must provide more than an unadorned, the-defendant-unlawfully-harmed-me accusation[.]'" *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (quoting *Iqbal*, 556 U.S. at 678).

In deciding whether to dismiss a complaint for failure to state a claim, the court "must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 13 (D.D.C. 2010) (citing *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003)).  However, the court need not accept as true inferences unsupported by the facts set out in the complaint or legal conclusions cast as factual allegations.  *Browning*, 292 F.3d at 242.

### B.      Legal Standard For A Motion For Summary Judgment Under Rule 56

Because both parties rely on the closed-circuit video footage of the vehicle incident to support their respective arguments regarding probable cause and qualified immunity (*see, e.g.,* Defs.' Mot. at 21, 29–31; Pl.'s Opp'n to Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. ("Pl.'s Opp'n"), ECF No. 18, at 14–18), this Court will honor Defendants' request that their motion be treated as one for summary judgment

under Rule 56 as an alternative to dismissal under Rule 12(b)(6) (*see* Defs.' Mot. at 1).[4]

Federal Rule of Civil Procedure 56 makes clear that summary judgment is appropriate

only if there is "no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court's role in deciding a

summary judgment motion is not to "determine the truth of the matter, but instead [to]

decide only whether there is a genuine issue [of material fact] for trial." *Barnett v. PA*

*Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted).  "A fact is

material if it 'might affect the outcome of the suit under the governing law,' and a

dispute about a material fact is genuine 'if the evidence is such that a reasonable jury

could return a verdict for the non-moving party." *Steele v. Schafer*, 535 F.3d 689, 692

(D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In determining whether there is a genuine dispute about material facts, the court

"must view the evidence in the light most favorable to the nonmoving party and . . .

draw all reasonable inferences in favor of the nonmoving party." *Grosdidier v. Broad.*

*Bd. Of Governors, Chairman*, 709 F.3d 19, 23 (D.C. Cir. 2013) (quotation marks and

citation omitted).  However, where an incident is captured on videotape, a court need

not view the facts in the light most favorable to the non-moving party, but should

instead "view[] the facts in the light depicted by the videotape[.]" *Scott v. Harris*, 550

U.S. 372, 381 (2007).

### C.    The Federal Tort Claims Act

The FTCA waives the sovereign immunity of the United States with respect to

---

[4]  To be clear, the Court has applied the summary judgment standard only when addressing the questions of probable cause and qualified immunity, and the only extra-pleading material that the Court has considered with respect to those questions is the closed-circuit video footage.

"claims arising from certain torts committed by federal employees in the scope of their employment[.]"  *Sloan v. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674).  "[T]he FTCA, by its terms, does not create new causes of action; rather, it makes the United States liable in accordance with applicable local tort law."  *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985) (citation omitted); *see also Tarpeh-Doe v. United States*, 28 F.3d 120, 123 (D.C. Cir. 1994) ("Tort liability under the FTCA is determined according to the law of the state where the alleged acts or omissions occurred." (citations omitted)).

Because Smith's complaint arises entirely from acts that occurred in Washington, D.C., this Court must consult District of Columbia tort law when assessing the complaint's FTCA claims. *Moore v. Hartment*, 92cv2288, 93cv0324, 2015 WL 1812852, at *15 (D.D.C. Apr. 17, 2015).  Furthermore, all defenses available under District of Columbia law with respect to Smith's underlying claims for false arrest and malicious prosecution apply with equal force in to his derivative FTCA claims against the United States. *See Carlson v. Green*, 446 U.S. 14, 23 (1980) ("[A]n action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." (citing 28 U.S.C. § 1346(b)).

## III.   ANALYSIS

As noted, Smith was arrested and prosecuted for assault on a police officer and assault with a deadly weapon as a result of the vehicle-related incident described above. He has brought four claims against the United States and two individuals arising out of this arrest and prosecution: three common law tort claims against the United States pursuant to the FTCA (false arrest, malicious prosecution, and intentional infliction of

emotional distress) and one *Bivens* claim against Rogers and Anyaso in their individual capacities for the violation of Smith's Fourth Amendment rights that allegedly occurred when he was arrested and prosecuted.[5]  As explained below, Smith's false arrest claim, and also the arrest-related Fourth Amendment *Bivens* claim that he has brought against the individual officers, can be sustained only if the Capitol police officers did not have probable cause to arrest Smith. *See Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 989–990 (D.C. Cir. 2014); *Scales v. District of Columbia*, 973 A.2d 722, 729 (2007). Similarly, the malicious prosecution claim, and any related constitutional *Bivens* contention, may proceed only if there was not sufficient cause to believe that Smith was, in fact, guilty of assaulting a police officer as charged.  *See Amobi*, 755 F.3d at 992; *Nichols v. Woodward & Lothrop, Inc.*, 322 A.2d 283, 285 (D.C. 1974).  Moreover, under District of Columbia law, a claim for intentional infliction of emotional distress must involve conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n.10 (D.C. 1994) (quotation marks and citation omitted).

For the reasons stated below, this Court finds that there was probable cause to arrest and to prosecute Smith, and thus, his claims for false arrest and malicious prosecution must be dismissed, along with the related Fourth Amendment *Bivens* claims that have been brought against Rogers and Anyaso.  Smith's intentional infliction of emotional distress claim must also be dismissed, because the complaint's allegations

---

[5] "*Bivens* is a judicially created doctrine that allows a plaintiff to bring a cause of action for money damages against agents acting under the color of federal authority who cause injury by violating the plaintiff's constitutional rights."  *Patterson v. United States*, 999 F. Supp. 2d 300, 308 (D.D.C. 2013) (citations omitted).

regarding Defendants' actions fall far short of establishing the outrageous conduct that is required to state such a claim.

### A.    There Was Probable Cause To Arrest Smith

Under District of Columbia law, the existence of probable cause is an affirmative defense that can be raised in response to an accusation of false arrest.  *See Scales*, 973 A.2d at 729.  "Probable cause to arrest exists if the arresting officer had sufficient information to support a reasonable belief that the suspect ha[d] committed or at that time was committing an offense."  *Rice v. District of Columbia*, 774 F. Supp. 2d 18, 22 (D.D.C. 2011) (citation omitted).[6]  The offenses at issue here are assault on a police officer and assault with a deadly weapon, both of which incorporate the basic elements of "simple assault" under District of Columbia law.  *See Perry v. United States*, 36 A.3d 799, 811 (D.C. 2011) (assault with a dangerous weapon); *In re J.S.*, 19 A.3d 328, 330 (D.C. 2011) (assault on a police officer).  And "[t]he three elements of simple assault are:  (1) an act on the part of the accused (which need not result in injury); (2) the apparent present ability to injure the victim at the time the act is committed; and (3) the intent to perform the act which constitutes the assault at the time the act is committed." *Ruffin v. United States*, 642 A.2d 1288, 1295 (D.C. 1994).  Notably, for the crime of assault on a police offer, the government must also prove "'that the defendant knew or should have known the victim was a police officer.'"  *In re J.S.*, 19 A.3d at 330 (quoting *Petway v. United States*, 420 A.2d 1211, 1213 (D.C. 1980)).[7]  Moreover, to

---

[6] Because "[p]robable cause may emanate from the collective knowledge of the police[,]" the arresting officer need not be the same officer who gathered the requisite information regarding the suspect's purported commission of a crime. *Rice*, 774 F. Supp. 2d at 23.

[7]  A person may be charged with assault on a police officer if the person "assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer[,]" D.C. Code § 22-405(b), and not only is this criminalized conduct is disjunctive, *see In re J.S.*, 19 A.3d at 331, it also encompasses

establish the crime of assault with a deadly weapon where that deadly weapon is a vehicle, the government "must prove that the [defendant] actually used the [vehicle] in a dangerous manner." *Perry*, 36 A.3d at 812.

This all means that, if there was sufficient information to support a reasonable belief that Smith committed the crimes of assault on a police officer and assault with a deadly weapon as defined above, then there was probable cause to arrest him, and any claims arising out of his allegedly false arrest must be dismissed. Moreover, and significantly for present purposes, the test for determining whether or not the police had sufficient information and a reasonable belief that the suspect had committed a crime "is dependent entirely on the facts as they actually occurred—*i.e.*, on the objective facts—without regard to what a police officer may have actually, even reasonably, perceived the facts to be." *District of Columbia v. Murphy*, 635 A.2d 929, 932 (D.C. 1993). Here, as explained below, the video footage provides an indisputable record of the objective facts and circumstances preceding Smith's arrest, and in this Court's view, the recorded events clearly establish that the arresting officers had more than sufficient information upon which to form a reasonable belief that Smith had committed the crimes of assault on a police officer and assault with a deadly weapon.

The video (which, again, was both referenced in the complaint and submitted to the Court by the Defendants) was recorded on the afternoon of November 5, 2009, by an elevated camera located on Delaware Avenue, Northeast, inside a security

---

actions that, standing alone, might not rise to the level of simple assault if directed at another individual. For example, the D.C. Circuit has held that probable cause to arrest a person for assault on a police officer exists where that person is "belligerent, refuse[s] to obey instructions, and loudly curse[s] at" a police officer. *Cromartie v. District of Columbia*, 479 F. App'x 355, 357 (D.C. Cir. 2012).

checkpoint at the intersection of Constitution and Delaware Avenues.  The camera points south down Delaware Avenue, and the checkpoint is marked by a security booth, bollards, a retractable ramp, and a barrier arm, which are all visible in the foreground of the video.  Behind the checkpoint is a traffic control circle, a crosswalk, and beyond them, Constitution Avenue.

The recording shows Smith, who was driving a black sedan, turning left from Constitution Avenue onto Delaware Avenue and pulling slowly over to the curb on the left side of the video, short of the security bollards.  Passengers exit from both sides of the car as Rogers approaches from the right side of video.  (*See* CCTV Video at 13:37– 53.)  Rogers stands beside the driver's window of Smith's car and the two engage in a discussion that lasts just short of a minute, while two other vehicles pass behind Rogers and continue through the checkpoint.  (*Id.* at 13:53–14:47.)  The footage then shows Rogers walking away from Smith's car, crossing in front of the vehicle, and taking approximately nine steps toward the security ramp and barrier arm.  (*Id.* at 14:47–53.) Smith then pulls off quickly from the curb, making a wide U-turn around the traffic control circle (passing close to Rogers at the bottom of the U-turn) and turning right onto Constitution Avenue.  (*Id.* at 14:50–15:01.)  Rogers turns back around toward Smith's car just as the car is whizzing past him.  (*Id.* at 14:51–53.)  The last relevant portion of the footage shows a police vehicle exiting the secured area and turning in the same direction as Smith had, and Rogers talking into his radio and then walking over and talking to a bystander.  (*Id.* at 14:55–16:52.)

The events depicted in the video, coupled with the facts alleged in the complaint, leave no doubt that a reasonable police officer would have believed that Smith had

committed the crimes of assault on a police officer and assault with a deadly weapon. First, while the exact speed at which Smith passes by Rogers is unknown, it is evident from that video footage that Smith pulled away much faster than he pulled in, and that he drove in the confined area aggressively and at a higher rate of speed than either of the two vehicles that had entered the checkpoint while Smith and Rogers were talking. In addition, although the position of the camera vis-à-vis Smith's car and Rogers makes it difficult to tell precisely how close Smith came to striking Rogers, it is clear that a reasonable officer would have felt threatened by the proximity of the fast-moving vehicle to Rogers's body, and that Smith did, in fact, have the capability of injuring Rogers with his vehicle. What is more, rather than backing up and turning hard (closer to the interior of traffic control circle) in light of the small area in which he had to operate, Smith instead drove *forward*—toward Rogers—before abruptly turning away. This indicates that Smith intentionally drove much closer to Rogers than was necessary to get back onto the main road.

Smith's intent to perform the assaultive act is not only reasonably inferred from Smith's conduct as shown in the video, *see Stroman v. United States*, 878 A.2d 1241, 1245 (D.C. 2005), it is further supported by the complaint's allegation that he and Rogers had engaged in a heated discussion seconds before the conduct at issue. (*See* Compl. ¶ 7 (explaining that Rogers "began to chastise and yell at him" after Smith dropped off his passengers).) There is also no dispute that Rogers is a police officer, and that Smith was aware of that fact at the time of his arrest. (*See* Pl.'s Resp. to Stmt. of Material Facts ¶ 3.) And the video footage further establishes the dangerousness of

Smith's conduct based on the proximity of Smith's car to Rogers, the confined space, his driving forward toward Rogers, and the speed with which Smith drove off.

In short, the objective facts and circumstances described in the complaint and depicted in the video footage convince this Court that it was reasonable for Rogers (who personally witnessed the event) to believe that Smith had committed the crimes of assault on a police officer and assault with a dangerous weapon.  Consequently, there was probable cause to arrest Smith for those crimes, and Smith's false arrest claim must be dismissed.  *See, e.g.*, *Scott v. United States*, 952 F. Supp. 2d 13, 19 (D.D.C. 2013) (granting defense motion for summary judgment on false arrest FTCA claim arising from arrest of protestor inside Supreme Court because Supreme Court Police had probable cause to arrest the individual for unlawful entry); *Jackson v. District of Columbia*, 541 F. Supp. 2d 334, 342–43 (D.D.C. 2008) (granting defense motion for summary judgment on false arrest claim where officer had probable cause to arrest plaintiff for making a threat to do bodily harm based on statements plaintiff made to officer); *Steward v. United States*, No. 03cv1404, 2005 WL 1903318, at *3 (granting defense motion for summary judgment on FTCA false arrest claim where Veterans Affairs police officers had probable cause to arrest plaintiff for loitering when he refused requests to leave hospital waiting room after discharge).  Furthermore, to the extent that Smith's Fourth Amendment *Bivens* claim against Rogers and Anyaso arises from the complaint's contention that these officers falsely arrested him, that claim also fails because the elements of a constitutional false arrest claim are essentially identical to a common law false arrest claim, including the availability of probable cause as an affirmative defense.  *See Amobi*, 755 F.3d at 989 ("Constitutional and common law

claims of false arrest are generally analyzed as though they comprise a single cause of action.").[8]

Smith's argument that there was no probable cause to arrest him because he did not, in fact, strike Rogers with his car (Pl.'s Opp'n at 17) is unavailing. Smith need not actually have touched Rogers to be convicted of assault on a police officer and assault with a deadly weapon, let alone to be charged with those crimes. *See Ruffin*, 642 A.2d at 1295; *see also United States v. Benn*, 476 F.2d 1127, 1133 n. 26 (D.C. Cir. 1973) ("There may, of course, be an assault without physical contact[.]"); *Konah v. District of Columbia*, 815 F. Supp. 2d 61, 80 (D.D.C. 2011) ("Physical contact is not an element of a prima facie claim of assault."). This Court also rejects Smith's attempt to turn probable cause in this case into a jury question: the video footage renders the pertinent facts related to this incident virtually indisputable, and "[w]here the facts are not in dispute[,] the question of probable cause is one of law for determination by the court." *Smith v. Tucker*, 304 A.2d 303, 306 (D.C. 1973). And based solely on the objective facts regarding the circumstances surrounding Smith's arrest as revealed in the video footage and alleged in the complaint, this Court finds that there was probable cause for the arrest at issue here. *See Scott*, 550 U.S. at 381. Consequently, Smith's false arrest claim against the United States must be dismissed, along with the related Fourth Amendment false arrest claim that Smith has brought against Rogers and Anyaso.

---

[8] With respect to Smith's suggestion that his *Bivens* claim is actually grounded on a theory of "perjurer's liability" rather than false arrest or malicious prosecution (*see* Pl.'s Opp'n at 14), the only decision in this Circuit that mentions "perjurer's liability" makes clear that that claim arises where "someone . . . causes an indictment and consequent arrest by perjuring himself or arranging for the submission of perjured testimony *before the grand jury*[.]" *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 419 (D.C. Cir. 1991) (emphasis added). Even assuming, arguendo, that probable cause is not an affirmative defense to this theory of liability, Smith has failed to allege that Rogers or Anyaso lied under oath before a grand jury.

**B.      There Was Sufficient Cause To Prosecute Smith For Assault On A Police Officer And Assault With A Deadly Weapon**

The analysis above makes quick work of the remaining FTCA claim for malicious prosecution and its Fourth Amendment counterpart.  (*See* Compl. ¶ 22 (alleging that Rogers and Anyaso lied in a manner that resulted in Smith's prosecution for charges that Rogers and Anyaso "knew had no basis in fact or law"); *see also id.* ¶¶ 8–10 (alleging that Rogers and Anyaso falsely reported that Smith did in fact strike Rogers with his car when, according to Smith, he did not come close to striking Rogers).)  To prevail on a malicious prosecution claim, "a plaintiff must plead and be able to prove:  1) that the underlying suit terminated in plaintiff's favor; 2) malice on the part of the defendant; 3) lack of probable cause for the underlying suit; and 4) special injury occasioned by plaintiff as the result of the original action." *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1282 (D.C. 2002) (citation omitted).  Under District of Columbia law, probable cause to arrest typically suffices to establish probable cause to prosecute.  *See Nichols*, 322 A.2d at 285 ("A finding that an arrest was based upon probable cause traditionally absolves a defendant from liability for a subsequent prosecution."); *see also Amobi*, 755 F.3d at 992 ("We think our discussion of probable cause for the false arrest is sufficiently analogous so as to be dispositive on the malicious prosecution claim."); *Prieto v. May Dep't Stores Co.*, 216 A.2d 577, 578 (D.C. 1966) ("There is no material distinction between reasonable grounds for detention in false imprisonment and probable cause in malicious prosecution.").  However, when considered in isolation, the probable cause analysis on a malicious prosecution claim differs somewhat from the probable cause analysis related to a false arrest claim because "[t]he issue in a malicious prosecution case is not whether there was probable

cause for the initial arrest, but whether there was probable cause for the underlying suit." *Pitt v. District of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007) (internal quotation marks and citation omitted).  Furthermore, there appears to be a partly subjective element to the probable-cause-to-prosecute analysis insofar as "probable cause depends not on the actual state of the case in point of fact, but upon the honest belief of the person instituting it." *Ammerman v. Newman*, 384 A.2d 637, 640 (D.C. 1978).  This means that a prosecution is not considered unlawfully malicious even if it "flow[s] from a belief that turns out to be unfounded[,] as long as it is not unreasonable." *Id.*

There was nothing unreasonable or unfounded about the prosecution at issue here.  As explained above, the police had probable cause to arrest Smith, and Smith has failed to allege any circumstances that arose *after* his arrest that would undermine the initial probable cause determination.  *See, e.g.*, *Apsey v. Chester Twp.*, 14cv3875, 2015 WL 1727406, at *4 (6th Cir. Apr. 15, 2015) (qualified immunity shielded officer from malicious prosecution claim where "[n]othing in the record suggests that the facts known to [the officer] at the time of arrest had materially changed by the time criminal proceedings were initiated so that any existing probable cause would have dissipated"); *Montalvo v. N.Y. York City Police Officer Jennings*, 93cv8351, 1996 WL 148483, at *3 (S.D.N.Y. Apr. 1, 1996) (malicious prosecution claim failed where "probable cause existed at the time of plaintiff's arrest, and plaintiff does not point to any change in circumstances between the time of the arrest and the time the grand jury declined indictment which would negate the existence of probable cause").  At most, Smith suggests that a post-arrest review of the video footage should have established a lack of

probable cause to prosecute him (*see* Compl. ¶¶ 10–11), but this Court has already found that the video footage provides ample cause to believe that Smith had committed a crime, and that finding fully supports *both* Smith's arrest *and* his subsequent prosecution.

Smith has also failed to demonstrate the relevance of the alleged lack of good faith shown by Rogers and Anyaso when they reported the facts related to Smith's arrest (assuming there was any) to the analysis of whether or not there was sufficient cause to prosecute Smith.  Indeed, although the D.C. Court of Appeals has indicated that the reasonable and honest belief of the defendant can *establish* the existence of probable cause, *Ammerman*, 384 A.2d at 640, this Court has been unable to find any suggestion that bad faith can *negate* a finding that probable cause exists, if such cause otherwise exists as an objective matter.  To the contrary, courts regularly conclude that there was probable cause to prosecute in the context of malicious prosecution claims without delving into the mental state of the defendant at all.  *See, e.g.*, *Wardlaw v. Pickett*, 1 F.3d 1297, 1305 (D.C. Cir. 1993); *Jackson*, 541 F. Supp. 2d at 343.

The bottom line is this:  whatever Rogers and Anyaso may have believed subjectively when they made allegations and issued reports about Smith's conduct, the fact that there was probable cause to prosecute Smith as an objective matter means that his malicious prosecution claim fails as a matter of law and must be dismissed.  And the related constitutional contention that Smith makes against Rogers and Anyaso—*i.e.*, that these officers maliciously "falsified police reports" to ensure Smith's prosecution "in violation of the 4[th] Amendment to the [C]onstitution" (Compl. ¶ 27)—must be treated similarly because, although the precise contours of a constitutional malicious

prosecution claim are somewhat uncertain, such a claim at the very least incorporates the common law requirement that there be a lack of probable cause, *see Pitt*, 491 F.3d at 511—a finding that this Court has already rejected here.

### C.   The Allegations Of Smith's Complaint Do Not State A Claim For Intentional Infliction Of Emotional Distress

The sole remaining claim of Smith's complaint is the contention that, as a result of his arrest and prosecution, he was subjected to intentional infliction of emotional distress ("IIED"). Two separate allegations of fact underlie this tort claim (which Smith has made against the United States under the FTCA). First, Smith alleges that Rogers and Anyaso falsely reported that Smith had hit Rogers with his car while driving away. (Compl. ¶¶ 9, 19.) Second, Smith alleges that Defendants continued to detain him even after they had the opportunity to review video footage that, according to Smith, exonerated him. (*Id.* ¶ 19.) Defendants argue that this claim must be dismissed under Rule 12(b)(6) because none of Smith's allegations are so extreme and outrageous as to state a claim for intentional infliction of emotional distress. (See Defs.' Mem. at 28–29.) Because this Court agrees that Smith has failed to allege sufficiently outrageous conduct, his intentional infliction of emotional distress claim must be dismissed.

The elements of an IIED claim are: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011) (quotation marks and citation omitted). "The requirement of outrageousness is not an easy one to meet." *Drejza v. Vaccaro*, 650 A.2d at 1312 (citation omitted). To state a claim for intentional infliction of emotional distress, "[t]he conduct must be 'so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013) (quoting *Drejza*, 650 A.2d at 1312 n.10 (D.C. 1994)).  Whether the conduct complained of is sufficiently outrageous is a question of law that should be decided by the court on a motion to dismiss.  *See Abourezk v. N.Y. Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C. Cir. 1990) ("[I]t is the job of the trial court, in the first instance, to determine whether the defendant's conduct may be regarded as so outrageous as to permit recovery." (citation omitted)); *see also* Restatement (Second) of Torts § 46 (1965).

Here, Smith's IIED claim appears to be based on the contention that Rogers and Anyaso "falsified police reports to justify the illegal arrest" (*i.e.*, they claimed that Smith struck Rogers's leg with his car when, in fact, Smith's car had merely passed by Rogers (*see* Compl. ¶ 19)), and also the fact that "the defendant officers continued to detain plaintiff even after video footage showed that the alleged wrongful conduct never occurred" (*see id.*).  The latter basis is a nonstarter given the Court's prior conclusion that the video footage of the incident clearly supported the arrest (*see supra* Part III.A), and the first contention is patently insufficient to give rise to liability for intentional infliction of emotional distress, even if one accepts the assertion that the officers lied about Smith's actions.  To understand clearly why this is so, one should recall that the assault charges that were leveled against Smith do not actually require physical contact; therefore, the alleged misrepresentations about Smith's car striking Rogers were, at most, an *exaggeration* of conduct that already justified arrest, and not a full-fledged fabrication of criminal conduct.  This fact distinguishes the instant case from *District of*

*Columbia v. Tulin*, 994 A.2d 788 (D.C. 2010), which Plaintiff cites and mistakenly relies upon.  In *Tulin*, the D.C. Court of Appeals accepted a jury verdict in the plaintiff's favor with respect to an IIED claim that had been brought against a police officer who, according to the plaintiff, had falsely and maliciously reported that the plaintiff had been driving recklessly, and had encouraged a subordinate to arrest the plaintiff, in order to camouflage the officer's own responsibility for the car accident that had resulted from the purported crime.  *Id.* at 800–03.  Here, by contrast, Rogers and Anyaso were reporting *accurately* that Smith had engaged in conduct that constituted assault on a police officer, even if their reports of Smith's criminal behavior contained embellishments about actually striking Rogers.  Put another way, *Tulin* does not establish the alleged false statements by Rogers and Anyaso can transform Smith's lawful arrest and prosecution into extreme and outrageous conduct on the part of the police in a manner that gives rise to an IIED claim, and indeed, at least one prior decision in this district strongly suggests that a false report about alleged criminal conduct, standing alone, is insufficiently outrageous to state a claim for IIED.  *See Lyles v. Micenko*, 404 F. Supp. 2d 182, 187 (D.D.C. 2005) (holding that "initiating a complaint with the police . . . , even if false, is not conduct that rises to the level of 'outrageousness' as to be beyond all possible levels of decency and utterly incomprehensible in a civilized society").

Moreover, and more significantly, this Court finds that nothing about Rogers's or Anyaso's alleged misrepresentations or the alleged duration and nature of Smith's detention comes anywhere *close* to the kind of extreme and outrageous conduct by government authorities that establishes a claim for intentional infliction of emotional

distress.  *See, e.g.*, *Moore v. D.C. Housing Auth.*, 720 F. Supp. 2d 1, 9–10 (D.D.C.

2010) (plaintiffs stated an IIED claim against the District of Columbia Housing

Authority and one of its officials when the agency took two and a half months to

respond to plaintiff's emergency request for an apartment transfer where conditions in

her current apartment were causing her disabled son to have seizures, and where rodents

were eating his feeding tube and depriving him of nutrition); *Herbin v. Hoeffel*, 806

A.2d 186, 197–98 (D.C. 2002) (plaintiff's allegations that his former lawyer

intentionally disclosed privileged information to a state prosecutor, in violation of her

ethical duties, "in order to secure the prosecution of her former client" were sufficiently

outrageous to state an IIED claim); *see also Ortberg v. Goldman Sachs Grp.*, 64 A.3d

158, 163 (D.C. 2013) (noting that an IIED claim cannot be grounded in "mere insults,

indignities, threats, annoyances, petty oppressions, or other trivialities" (quotatin marks

and citation omitted).  Thus, Smith has utterly failed to allege any facts that, if true,

would support the conclusion that the police acted in a manner that was "utterly

intolerable in a civilized community" with respect to Smith's arrest and prosecution.

*Armstrong*, 80 A.3d at 189 (internal quotations marks and citation omitted).

Consequently, Smith's IIED claim must be dismissed.

## IV.   CONCLUSION

In this lawsuit, Smith seeks damages for his arrest and prosecution after he used

his vehicle to make an aggressive exit from a heated encounter with a Capitol Police

Officer in the fall of 2009.  The incident was captured on videotape, and having

reviewed the video footage, this Court easily concludes based on Smith's own actions

that there was probable cause to believe that Smith had committed the crimes of assault

on a police officer and assault with a deadly weapon.  Consequently, Smith's false arrest, malicious prosecution, and Fourth Amendment *Bivens* claims cannot stand.  In addition, because the allegations in Smith's complaint fail to mount the high bar of "outrageousness" that a plaintiff must meet in order to state a claim for intentional infliction of emotional distress, that claim, too, must be dismissed.

Accordingly, as set forth in the order that this Court issued on July 31, 2015, Defendants' motion to dismiss or, in the alternative, for summary judgment has been **GRANTED**, and this case has been **DISMISSED**.  That Order is now a final, appealable order.

DATE:  August 14, 2015

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge